UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDINE E. SLAUGHTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-CV-02201 (ESH) |
| | ) |
| MARY E. PETERS | ) ECF |
| U.S. Department of Transportation | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S ANSWER

Defendant, through his undersigned attorneys, hereby answers and otherwise responds to Plaintiff's Complaint in paragraphs corresponding to the paragraphs of the Complaint, as follows[1]:

### Introduction

This paragraph consists of Plaintiff's statement of the nature of his claim to which no response is required.

### Paragraphs

1.  This paragraph consists of legal conclusions related to Plaintiff's statement of the nature of her claim to which no response is required; however, to the extent a response is required, it is denied.

---

[1] Plaintiff has failed to number each paragraph of her complaint and each paragraph contains multiple sentences. To ensure clarity, Defendant attaches a copy of Plaintiff's Complaint in which each sentence in the complaint has been numbered and is regarded as a separate paragraph (marked as Attachment 1). To the extent that in the conversion of the paper document into a Word text there were any errors in the translation or any text is missing, Defendant requests the opportunity to file a response to any allegations, but in the interim, denies such allegations.

2. This paragraph consists of statements of the law to which no response is required.

3. This paragraph consists of statements of the law to which no response is required.

**Reassignment of Duties**

4. Defendant is without sufficient knowledge or information to admit or deny because the term "AES duties" is vague. Defendant avers that Plaintiff has not had any responsibilities with regard to Automated Exemption System since October 2004 when she was promoted to a permanent Management and Program Analysis position, FG-343-11.

5. Admit

6. Defendant is without sufficient knowledge or information admit or deny because the term "AES duties" is vague. Objection to the phrase "AES duties" as vague. Defendant avers that Plaintiff has not had any responsibilities with regard to Automated Exemption System since October 2004 when she was promoted to a permanent Management and Program Analysis position, FG-343-11.

7. Admit that Plaintiff trained the secretaries in October 2004 on how to input data through the AES software, assisted secretarial staff with navigating the AES software and wrote instructions on how to input data through the AES software.

8. Deny that Plaintiff was a stronger candidate to research, analyze, evaluate or correct errors in the database and that plaintiff had three years work with AES prior to May 2006. Defendant has insufficient knowledge to admit or deny whether Plaintiff's degree was in Organizational Management with a background in computer science.

9. Deny.

10. This paragraph consists of Plaintiff's opinion to which no answer is called for. To the extent an answer is required, this is denied.

11. Admit in so far as this is a quotation from FAA's Permanent Internal Assignment EMP 1.14.

12. Admit in so far as this is a quotation from FAA's Permanent Internal Assignment: EMP 1.14

13. Deny in so far this paragraph suggests that Plaintiff duties were ever reassigned. Additionally this paragraph contains Plaintiff's opinion to which no response is required, to the extent a response is required it is denied.

### B. Accretion of Duties

.

14. Deny that the duties of the staff members were "fungible." Admit in so far that on the days when a staff member with specialized subject matter expertise was/is not available to work due to being in a leave status or assigned to duties outside of the Program Analysis Staff Office of Rulemaking (ARM-20) Office, other members of the staff have/do serve(d) as a back up.

15.     Admit in so far as plaintiff not being a subject matter expert based on her "web duties." Deny in so far as plaintiff alleges spending 50% of her time on Web duties for the last five years.

16.     Admit in so far as a Caucasian co-worker received a promotion in February 2005

from a GS-12, Transportation Regulations Analyst, to a GS-13, program Analyst. Deny as to the remaining allegations.

17. Deny that Mr. Fazio rewarded the Caucasian co-worker with familial favoritism because her husband is an SES in Flight Standards service within the Aviation Safety Line of Business.

18.     Deny.

19.     Deny that Plaintiff was performing higher level work.  Admit in so far as Plaintiff served as the ARM non-technical representative at web content meetings for three years in order to keep ARM management abreast of what requirements the Office of Aviation Safety (AVS) was imposing on the web content and design.

20 Deny the allegations concerning disparity in treatment.  The rest of the paragraph contains Plaintiff's opinion to which no answer is required.  To the extent an answer is called for, it is denied.

21.     Admit in so far as it is an accurate quotation from 29 CFR 1614.105 (a)(1).

22.     Deny.  Defendant further avers that Plaintiff became a collateral duty EEO Counselor on behalf of the Defendant on May 3, 2005.

23.  Insufficient knowledge or information that nothing occurred from January 2006 until April 2006 that would have otherwise created a reasonable suspicion of  discrimination. Defendant lack sufficient knowledge or information to admit or dent as to what plaintiff may have found.

24.     Deny that Mr. Fazio or Ms. Eve Adams failed to communicate the results of the audit in a timely fashion to Plaintiff.  Additionally this  paragraph contains Plaintiff's opinion and conclusion for which no answer is required.  To the extent an answer is required, it is denied.

25. Admit.

26. Admit.

27. Deny that Mr. Fazio questioned Plaintiff's writing skills several times. Defendant lack sufficient knowledge or information to admit or deny whether, when or for what employment Plaintiff was required to complete a writing exercise as a qualification.

28. Deny that Mr. Fazio described Plaintiff's duties as menial. Admit in so far as Mr. Fazio described Plaintiff duties as administrative.

29. This paragraph does not contain any allegations of fact to which an answer is required. To the extent an answer may be required, Defendant lacks sufficient knowledge or information to admit or deny because Plaintiff has not identified the dictionary to which she refers.

30. Deny.

31. Deny.

32. This paragraph contains Plaintiff's opinion to which no answer is called for. To the extent an answer is required, it is denied.

33. Deny

34. Deny in so far as this paragraph alleges that Plaintiff consistently received writing assignments.

35. This paragraph consist of plaintiff's opinion and conclusions of law to which no answer is required. To the extent that an answer is required it is denied.

36. Admit in so far as Plaintiff was a team lead in the ARM Scanning Project Plan.

Defendant lacks sufficient knowledge or information to admit or deny whether, when or where Plaintiff may have listed herself as the team leader in a version of the ARM Scanning Project Plan.  Defendant also is without sufficient knowledge or information or knowledge to admit or deny as to who Plaintiff contends "Person A" to be and whether, when or where Plaintiff may have listed "Person A" as the Project Coordinator .

37.  Deny that Plaintiff was a Contracting Officer Technical Representative (COTR). Defendant lacks sufficient knowledge to admit or deny the remaining allegations.

38.   Deny that Plaintiff was a Contracting Officer Technical  Representative. Defendant lacks sufficient knowledge or information to admit or dent as to the rest of the alegations.

39.  This paragraph contains Plaintiff's opinion to which no answer is called for.  To the extent an answer is required this paragraph is denied.

40.   Admit in so far as there were complications with the contract associated with the ARM Scanning Project in August 2006.  Deny that Plaintiff was the COTR on the ARM Scanning Project contract.  Defendant lacks sufficient knowledge or information  to admit or deny whether or who the Contracts Office allegedly contacted plaintiff regarding the contract. Defendant also lacks sufficient knowledge or information to admit or dent what the unidentified person in the Contract Office may have told Plaintiff.

41.  Admit that Plaintiff did not sign any invoices.  Deny that Plaintiff's official performance plan with the Defendant identified her as being a COTR from November 2004 through July 2005.  Defendant lacks sufficient knowledge or information to admit or deny the reasons why Plaintiff may have listed herself and/or her alleged duties in Plaintiff's Attachment

K to her Complaint.

42. Admit that all COTRs, whether Caucasian or non-Caucasian, are informed of their COTR duties.

43. This paragraph states Plaintiff's opinion to which no answer is required. To the extent an answer is required this paragraph is denied.

44. Deny that the Agency took action to humiliate plaintiff before her peers and that it took action to cause plaintiff to submit a letter of resignation and that her duties were the only duties performed by higher graded employees.

Admit in so far that plaintiff submitted a letter of resignation to Ms. Adams on January 2, 2007 stating that the effective date of her resignation would be February 16, 2007, but withdrew the letter of resignation effective February 5, 2007.

Admit in so far as plaintiff's duties were assigned to higher grade employees, in addition to their regular duties, during plaintiff's detail to the Center for Early Dispute resolution.

Defendant lacks sufficient knowledge or information to whether plaintiff's stress caused her to resign or whether the assignment of he duties during her detail caused a devastating plummet in Plaintiff's motivation to work.

### Relief Requested

45. Deny that Plaintiff is entitled to the relief requested or any relief whatsoever. Defendant further avers that any relief would be subject to and limited by 42 U.S.C. §1981a and by 42 U.S.C. §2000e-5(g)(e)(B).

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Defendant asserts that this Court lacks subject matter jurisdiction because plaintiff failed to exhaust her administrative remedies.

### Second Affirmative Defense

Plaintiff has failed to exhaust administrative remedies.

### Third Affirmative Defense

Plaintiff has failed to state a claim upon which relief can be granted.

WHEREFORE, having fully answered, Defendant respectfully requests that the court enter judgment in his favor, dismiss the complaint with prejudice, and grant him such other relief as may be proper.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
Raymond A. Martinez TX.. BAR # 13144015
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
 202) 514-9150
(202) 514-8780 (facsimile)

**Certificate of Service**

I hereby certify that on this 6th day of March I caused the foregoing Answer to Complaint be served on Plaintiff, **Judine Slaughter,** via first class mail, postage prepaid addressed as follows:

Judine Slaughter
6104 Osborn Rd.
Cheverly, MD. 20785

                                            Raymond A. Martinez
__/s/_____
Raymond A. Martinez
Special Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-9150

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Judine E. Slaughter
6104 Osborn Road
Cheverly,~D 20785
(301) 386-4033

"ATTACHMENT #1"

VS.

The Honorable Mary E. Peters
Secretary of Transportation
1200 New Jersey Ave, SE
Washington, DC 20590

COMPLAINT

**Introduction:** This complaint is filed by Ms. Judine E. Slaughter [hereafter the Plaintiff] against the Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT) [hereafter the Agency].

**1.** The Plaintiff alleges that the Agency discriminated against her on the basis of race (African-American) when: (1) on May 16, 2006, she became aware that her duties pertaining to the Automated Exemption System (AES) were being reassigned to Ms. Nancy Trembley (Office of Rulemaking, Caucasian) GS-14 employee; 1 and (2) in April 2006, when the Plaintiff received the results of a desk audie which did not support an upgrade of her position.

1 The Plaintiff also raised the following claim, which she withdrew prior to the investigation:
   Whether she was discriminated against based on race (African-American) when on June 8. 2006, she became aware that a GS-12 employee served as a point-of-contact for a rule, and she had performed the duties previously without any recognition.
2 Attachment A - Plaintiffs January 25. 2006. desk audit.

EXHIBIT 1 - Nov 6, 2007 EEOC Denial

2. Title VII of the Civil Rights Act of 1964 Sec. 2000e-2(a)(2) states it shall be an unlawful employment practice for an employer to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

3. Additionally, in the Federal Wage System Operating Manual, Subchapter S 1-3(b)(2) states, "There will be equal pay for substantially equal work for all prevailing rate employees who are working under similar conditions of employment in all agencies within the same local wage area."

A. **Reassignment of Duties**

4. On May 18, 2006, the Plaintiff learned in a weekly Program Analysis staff meeting of the reassignment of the AES duties.

5. Ms. Trembley stated that she needed the AES application installed on her desktop in order to correct data entry mistakes.

6. It was at this time the Plaintiff realized the Phase II Integrated Rulemaking Management Information System requirements[3] included the AES duties.

7. The Plaintiff trained the secretarial staff for the AES system in October 14, 2004, assisted the staff with troubleshooting AES concerns, and wrote the AES instructions. [4]

, Attachment B -- See page ]4 of tile Office of Rule making's FY 2005 Quality Performance Plan.
" Attachment C u  Emails verifying AES training, and assisting Office. of Rulemaking staff, with AES I nstruclions

2

8. It would reasonable to conclude the Plaintiff ~as a stronger candidate to research, analyze, evaluate or correct errors in the database based upon her Bachelor's degree in Organizational Management with a background in computer science, and her three years work with AES, prior to May 2006.

9. On the other hand, Ms. Trembley's highest academic level is a high school diploma and she has been employed at the FAA in the administrative field for 75% of her career.

10. Thus, the reason provided to communicate with the secretaries about issues concerning the database, or to provide factfinding and make recommendations on how to improve the functionality of the database are a pretext for discrimination race-based animus. See *Harley v. Department of Labor,* EEOC Appeal No. 07 A30077 (September 30, 2003) and *Johnson Jr. v. Environmental Protection Agency,* EEOC AppealNo. 07 A30128 (August 11,2005).

11. The FAA's Permanent Internal Assignment EMP-1.14 states, "When an administrative reassignment or relocation is contemplated, the employee shall be fully informed of the reasons why the action must be taken.

12. The personal interests and desires of the employee shall be carefully considered, but the final decision on any such proposed action shall be decided according to the needs of the FAA."

13. Since there are no statements from Mr. Fazio that the complainant had actual or constructive knowledge of the reassignment of duties before May 2006, it is an erroneous interpretation of FAA policies to conclude the complaint was untimely. See *Webb v. United States Postal Service,* EEOC Appeal No. 01A54870 (December 21,2005).

### B. Accretion of Duties

**14.** The Plaintiff shared fungible duties with her Caucasian co-workers as part of the Program Analysis Staff in the Office of Rulemaking.[5]

**15.** Although the Plaintiff had spent 50% of her time on the web duties[6] for the last five years, she was not considered a subject matter expert.

**16.** Comparatively, a Caucasian co-worker received a promotion in February 2005 from a GS-12, Transportation Regulations Analyst, to a GS-13, Program Analyst, for performing the primary duties of the Alternate Federal Register Liaison[7] for less than one year.

**17.** It is reasonable to conclude that Mr. Fazio rewarded the Caucasian co-worker with familial favoritism because her husband is an SES in the Flight Standards Service within the Aviation Safety Line of Business.

**18.** Both a description of the Aviation Safety web team duties[8] and the description of a Program/Management Analyst (Web Project Coordinator), GS-0343-11/14 duties[9] clearly show the Plaintiff was working at a higher grade level than a GS-11.

**19.** Additionally, it is reasonable to conclude that Mr. Fazio was aware that the Plaintiff was performing at the higher level work, as the Plaintiff had attended weekly web content meetings for the past three years.

---

5 Attachment D - Office of Rulemaking and Program Analysis Staff Roles & Responsibilities
6 Attachment E - Plaintiffs Program Analyst's Position Description from desk audit, and Plaintiffs description of duties.
7 Attachment F - Federal Register Publication Checklist & Analyst Duties lResponsibilities
8 Attachment G - Printout from FAA Intranet site, and Aviation Safety's Trained and Approved Web Developers.
9 Attachment H - Web Project Coordinator's position description from the Economic Research Ser\"ice.

20. The Agency failed to offer a credible, nondiscriminatory reason for the disparity. See Wimbley-Osborne v. Department of Defense, EEOC No. Appeal No. 07A20098 (June 12, 2003)

21. In 29 C.F.R. Part 1614(a)(l), it states, "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."

22. The Agency failed to show that the complainant was informed of the desk audit within 45 days after the January 25, 2006 date, or that EEO posters were on display notifying the Plaintiff of the 45 day limitation period from the date of personnel action.

23. The Plaintiff found that nothing occurred from January 2006 until April 2006 that would otherwise have created a reasonable discriminatory suspicion of the delay. 10

**Substantial impact on the policies, practices, or operations of the Agency.**

24. It is an erroneous interpretation of the law that Mr. Fazio or Ms. Eve Adams (Office of Rulemaking, Program Analyst Staff Manager) communicated the results of the audit in a timely manner. See *Bingham v. United States Postal Service,* EEOC Appeal No. 01S50221 (February 25,2005); *Paszko v. USPS,* EEOC Appeal No. 01A40802 (February 27,2004); and *Sangiovanni v. Department of Navy)(.* EEOC Appeal No. 01 A3 1466 (March 31, 2004).

5

25. The FAA's Standards of Conduct ER 4.1 states that supervisors are to, "Treat their employees with dignity, respect and in a fair and equitable manner in conformance with FAA Model EEO Program.

26. In addition, supervisors and managers will communicate to their staff that they will not tolerate or condone discrimination, or the appearance of discrimination, on the part of any employee."

27. The record clearly shows Mr. Tony Fazio (Office of Rulemaking, Director) questioned the Plaintiff's writing skills several times," although she completed a writing exercise as a qualification for employment.

28. In addition, when the complainant requested to be replaced on the web content team, Mr. Fazio stated the Plaintiff's duties were administrative and menial. 12

29. The Merriam Webster definition of menial is a domestic servant person attached or owing service to a household.

30. The record clearly shows Mr. Fazio's assumption that African-Americans are subservient employees is not an isolated event.

10 Alta,'hlllent J- LN[ \If PLtillllifr, IIlCClil1."~ fr<)1ll Lotus ;";otcs Juring January ::'006 thnlugh April ::'006.

31. From June 2000 until November 2005, Mr. Fazio encouraged his staff to hire 8% Caucasian employees (1 of 12) and 83% African- American employees (5 of 6) as administrative staff, out of 17 new hires. (Attachment P)

32. The Agency is liable for the harassment, since it failed to prove that the Plaintiff unreasonably failed to avail herself of preventative or corrective learning opportunities.[13]

33. Never did the Agency provide proof that the Caucasian co-workers with similar duties were treated in the same manner as the Plaintiff.

34. Additionally, the Plaintiff consistently received and completed assignments which required the ability to write clearly and concisely.14

35. The rule on vicarious liability set forth by the Supreme Court in sexual harassment cases applies to harassment based on various protected classes. See *Whidbee v. Department of the Navy*, EEOC Appeal No. 01A40193 (March 31, 2005), *Diggs v. Department of the Army*, EEOC Appeal No. 01A12480 (January 9, 2003), and *Brown v. USPS*, EEOC Appeal No. 01A61098 (May 26, 2006).

36. Similarly, the Plaintiff listed herself as the Team Leader and Person A as the Project Coordinator in the "ARM Scanning Project Plan.,,

37. In August 2006, the complainant learned she was listed as the Contracting Officer Technical Representative (COTR) for the project.

---

]1 Attachment J - I sl June 2003 entry in the Plaintiffs unofficial time line for discriminatory events.
12 Attachment J - November 2004 entry in the Plaintiffs unofficial time line for discriminatory events. 13 Attachment K - In Training section of the Plaintiffs initiated EEO complaint.
14 Attachment L - Final rule written by Plaintiff; Definition of Commuter Aircraft at Ronald Reagan Washington national Airport (70 FR 290(2)

**38** The record clearly states the Plaintiff was not aware of the COTR assignment in November 2004.

**39.** It is reasonable to conclude that Mr. Fazio would have informed the Plaintiff of the assignment, as he was the management official at the time.

**40.** It was in August 2006, after the contract had complications, someone called from the Contracts Office to notify the Plaintiff that she was listed as the COTR.

**41.** With this notification, the Plaintiff listed herself as the COTR for the scanning project from November 2004 until July 2005 in the Performance Expectation Chart,16 however the Plaintiff never signed an invoice.

**42.** To the Plaintiffs knowledge, her Caucasian peers were always informed of their COTR duties.

**43.** Taken in its totality, the evidence demonstrated that the Agency, through Mr. Fazio, had subjected the Plaintiff, over a sustained period of time, to race discrimination that tainted and motivated the actions taken by agency officials towards Plaintiff because she was an African-American.

---

15 Attachment M -- ARM Scanning Project Plan. dated November 2004.

16 Attachment K - Performance Expectation Chart section in Plaintiffs initial EEO complaint.
17 Attachment J - 3rd June 2004 entry in the Plaintiffs unofficial time line for discriminatory events. IS Attachment N - Email from Plaintiff to Office of Rule11laking's Program Analysis Staff Manager.

44. The Plaintiff suffered humiliation from her peers, 17 stress that caused her to resign from her position before securing another job, 18 and devastating plummet in motivation to work when her duties were assigned to higher grade employees during her detail assignment to the Center for Early Dispute Resolution.[19] *Stansbury v. Department of Veterans Affairs*, EEOC Appeal No. 01A33842 (January 26, 2005).

**Requested Relief**

45. The Plaintiff seeks the following corrective actions:
    A. Placement in a position she would have occupied absent the discrimination, or if justified, a substantially equivalent position.
    B. Commitment that corrective, curative or preventive action will be taken, and measures adopted, to ensure that a violation of the law similar to the Plaintiff will not recur.
    C. Payment for the last three year on a make whole basis for any loss of earnings the Plaintiff may have suffered as a result of the willful discrimination.
    D. Expunction from the Agency's records of any adverse material relating to the discriminatory employment practice.

Respectfully Submitted,

*IGt:GLvU- J {M O WIJ*

Judine Slaughter 6104
Osborn Road
Cheverly, MD 20785
301-386-4033
December 7, 2007

Iq Attachment O - Email from Office of Rulemaking:s Program Analysis Staff Manager.